```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```
_____

PIERRE WRIGHT,

     Plaintiff,

  vs.

                                    No.    18-2390-JPM-dkv

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

     Defendant.
_____

    REPORT AND RECOMMENDATION AFFIRMING THE DECISION
                  OF THE COMMISSIONER
_____

On June 7, 2018, the plaintiff, Pierre Wright ("Wright"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 405(g) on the court-provided form seeking judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.*[1] (Compl. ¶ III, ECF No. 1.)  Wright also filed a motion for leave to proceed *in forma pauperis*, (ECF No. 2), which the court granted on June 18, 2018, (ECF No. 4).  He seeks, as relief, reversal of the unfavorable decision. (Compl., ECF No. 1.)  This case was referred

---

[1]Although Wright also applied for and was denied benefits under Title XVI, 42 U.S.C. § 1381 *et seq.*, his complaint does not indicate that he intends to appeal the ALJ's decision regarding this claim.  (Compl. ¶ III, ECF No. 1.)

to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

I.   PROPOSED FINDINGS OF FACT

A.   Procedural History

In May 2014, Wright applied for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. (R. at 157-71.) Wright alleges that his disability commenced on January 18, 2014, (*id.* at 159), when he became unable to work because of schizophrenia, depression, and a broken leg with associated arthritis, (*id.* at 189-95).[2] Wright's claims were denied initially on September 10, 2014, (*id.* at 64-65), and again upon reconsideration on August 28, 2015, (*id.* at 88-89). Wright requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 129.) He appeared and testified at the hearing before the ALJ on June 22, 2017 in Memphis, Tennessee. (*Id.* at 29-43.) On August 16, 2017, ALJ John A. Peebles issued an unfavorable decision denying benefits. (*Id.* at 10-28.) Wright appealed the ALJ's

---

[2]This is Wright's third application for disability insurance benefits under Title II of the Act since 2008. (R. at 13.) The most recent prior application was denied on May 1, 2013. (*Id.*)

decision to the Social Security Appeals Council ("Appeals Council"), and on April 13, 2018, the Appeals Council denied Wright's request for review of the ALJ's decision. (*Id.* at 1-5.) Accordingly, the ALJ's decision became the Commissioner's final decision. On June 7, 2018, Wright filed the present lawsuit seeking judicial review of the ALJ's August 16, 2017 decision. (Compl., ECF No. 1.)

B.  Factual Background

Born on June 16, 1990, Wright was twenty-three years old on January 18, 2014, the date alleged as the onset of disability. (R. at 159, 166.) He completed the twelfth grade and attended multiple semesters of college but did not complete a college degree. (*Id.* at 191.) Wright has specialized forklift training. (*Id.*) Wright has worked as a cook, a material handler, and an overnight associate at a grocery store, (*id.* at 192), but he was unemployed at the time of the ALJ hearing, (*id.* at 36-37.)

In his disability report, Wright alleged disability due to schizophrenia, depression, and a broken leg with associated arthritis and lower extremity weakness. (*Id.* at 190.) In his function report, Wright alleged complications stemming from his leg injury. (*Id.* at 212-19.) He claimed that these conditions affect his ability to lift, squat, bend, stand, see, remember, concentrate, and understand. (*Id.* at 217, 238-45.) He stated that his conditions limit his ability to work because he "can't

stand for long periods of time" and "can't play ball like [he] used to." (*Id.* at 212.) As to activities of daily living, Wright stated in his function report that he is able to feed himself, prepare frozen dinners and sandwiches, shop for food and clothes, follow instructions, watch television, do yard work, go to church and visit friends, and can walk for thirty (30) minutes before resting. (*Id.* at 212-19.) Wright also reported that he travels on foot, by riding a bicycle, or by using public transportation. (*Id.* at 215.) Wright stated that he is able to count change and handle a savings account but is unable to pay bills or use a checkbook or money orders. (*Id.*)

At his hearing before the ALJ, Wright testified that his mental illnesses hinder his ability to work. When asked about the main factor preventing him from working, Wright testified, "my employers have told me, you know, there's some – some – something quite not right about my mental – you know, my engagement with people and things of that nature. That's one, my mental – from a mental perspective." (*Id.* at 38.)

The record contains treatment records and medical opinions from 2014 to 2016. The relevant records are discussed *infra*.

C.  The ALJ's Decision and the Five-Step Analysis

The ALJ rendered his decision on August 16, 2017. (R. at 13-

4

24.) Using the five-step disability analysis,[3] the ALJ concluded that Wright was not disabled from January 18, 2014, the alleged disability onset date, through the date of his decision. (*Id.* at 23.)

Under the first step of the sequential analysis, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At this first step, the ALJ found that Wright had not engaged in substantial gainful activity for a continuous twelve-month period. (R. at 16.) The ALJ found, however, that Wright worked after his alleged onset date and that his wages were below the threshold for substantial gainful activity in both 2014 and 2015, but he performed work at substantial gainful activity in the first quarter of 2016. (*Id.*)

At the second step, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii),

---

[3] Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520 & 416.920. The Social Security Act defines disability as the inability to engage in substantial gainful activity which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

5

(c).  At this step, the ALJ found that Wrights suffers from a history of alcohol abuse and depressive disorder.  (R. at 16.)  The ALJ found that both of these conditions constitute severe impairments and collectively exert a more than minimal effect on Wright's ability to perform work.  (*Id.*)  The ALJ found, however, that Wright's mental limitations do not result in disabling functional limitations when considered with or without the substance abuse.  (*Id.*)

In the third step, the ALJ determines whether the impairments meet or equal the severity criteria set forth in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P. App. 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  At this step, the ALJ found that Wright's impairments neither meet nor medically equal the criteria of any of the listings.  (R. at 16-18.)

If the claimant's impairments do not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine the claimant's residual functional capacity ("RFC") to work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e).  Here, the ALJ determined Wright's RFC as follows: "[Wright] has the residual functional capacity to perform work at all exertional levels except he is limited to jobs involving simple and routine tasks consistent with unskilled work."  (R. at 18.)  The ALJ then found, consistent with the vocational expert's ("VE") testimony, that Wright is unable to perform any past relevant work, namely as a fast food

6

cook and a material handler.  (*Id.* at 22.)

At the final step, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant has the ability to make an adjustment to other work.  *See* C.F.R. §§ 404.1520(a)(4)(v), (g).  In reaching this decision, the ALJ considered the testimony of the VE and found that, although he could not perform any past relevant work, Wright is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and thus, "a finding of 'not disabled' is . . . appropriate."  (R. at 23.)  Despite the limitations in the RFC assessment, the VE testified that Wright could perform work as a packager, laundry laborer, or a cashier. (*Id.* at 41.)  The VE testified that these jobs combine for more than five million jobs in the national economy.  (*Id.* at 42.)  Upon questioning by the ALJ, the VE confirmed that such testimony was consistent with the Dictionary of Occupational Titles ("DOT")[4] and its companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO").[5]  (*Id.*)  The ALJ provided Wright with an opportunity to question the

---

[4]*See* Info. Tech. Assocs., *Dictionary of Occupational Titles*, http://www.occupationalinfo.org/ (last visited Oct. 18, 2018).

[5]*See* U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993), http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf.

7

VE; however, Wright did not question the VE or bring any inconsistencies to the ALJ's attention. (*Id.* at 42-43.)

II.   PROPOSED CONCLUSIONS OF LAW

A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision, and whether the Commissioner used the proper legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and "must 'take into account whatever in the record fairly

8

detracts from its weight.'"  *Abbott*, 905 F.2d at 923 (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).  If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way."  *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).  Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material in the testimony.  *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

B.   Substantial Evidence Supports the ALJ's Decision

   Upon review of Wright's complaint and his brief, (ECF Nos. 1, 14), the court construes Wright's statements and arguments as a challenge that the ALJ's findings are not supported by substantial evidence.  Wright, however, does not identify any specific errors allegedly made by the ALJ.  (*See* Compl., ECF No. 1 & Pl.'s Br., ECF No. 14.)  The ALJ found that Wright retained the RFC to perform work at "all exertional levels" except that he is "limited to jobs involving simple and routine tasks consistent with unskilled

9

work." (R. at 18.) In reaching his decision, the ALJ discussed Wright's testimony regarding his symptoms, daily activities, abilities, and limitations from his alleged physical and mental impairments. (*Id.* at 18-22.) The ALJ found that Wright suffered from the following severe impairments: a history of alcohol abuse and depressive disorder. (*Id.* at 16.) The ALJ concluded, however, that Wright's statements concerning the intensity, persistence, and limiting effects of his symptoms were not supported by the medical record. (*Id.* at 18-22.)

At the outset, the ALJ noted that Wright stopped working on January 18, 2014, the alleged disability onset date, at his last job because he was terminated, not because of any disabling medical issues. (*Id.* at 18.) Moreover, the ALJ observed that Wright worked during his alleged period of disability. (*Id.* at 180.) An ALJ may consider a claimant's work history, including work during the alleged period of disability, in evaluating the claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971.

Wright's consultative physical exam with Dr. Linda Yates, which resulted in normal findings with no restrictions, supports the ALJ's decision. (R. at 355-358.) Wright's alleged physical limitations come from an old injury. The ALJ found that Wright broke his leg at 12 years old, and current x-rays "show a completely healed fracture with no abnormalities." (*Id.* at 19,

10

297.)  Further, the ALJ found no evidence of any continued treatments for leg pain, (*id.* at 19), and objective medical findings repeatedly indicated Wright has a normal gait and range of motion in all extremities, (*id.* at 280-325). Wright also self-reported the ability to walk without difficulty, play basketball, ride a bicycle, and travel on foot.  (*Id.* at 19, 29-43, 212-19, 319-25.)  For these reasons, the ALJ reasoned that Wright failed to establish that his alleged symptoms affected his physical ability to perform basic work activities.  (*Id.* at 19.)

Wright's scarce and inconsistent mental health treatment history and records also support the ALJ's decision.  The ALJ noted that Wright failed to seek mental health treatment between 2011 and 2014.  (*Id.*)  After filing the current disability claim, Wright was examined by a consultative psychologist, Dr. Diane Camp, Ph.D., in August 2014, who concluded Wright had no significant mental impairment and exhibited no evidence of a depressed mood or anxiety.[6]  (*Id.* at 19, 319-25.)  A few months later, in November of 2014, Wright sought mental health treatment on his own at Memphis Mental Health Institute but was turned away after sobering

---

[6]During this psychological evaluation, Dr. Camp noted that Wright was guarded and evasive when discussing his mental history and had poor capacity to give details of his symptoms.  Dr. Camp observed that Wright had a calm mood, adequate attention and concentration, impaired judgment and insight, and normal speech, thoughts, psychomotor activity, and abstract reasoning ability.  (*Id.* at 319-25.)

11

up from his intoxicated state, denying any mental symptoms, and receiving normal results on his psychiatric examination. (*Id.* at 19, 326-33.) Shortly thereafter, on November 11, 2014, Wright was diagnosed with major depressive disorder with psychotic features and schizoaffective disorder William Baker, LCSW, at Alliance Healthcare Services. (*Id.* 343-44, 346.) However, the ALJ found that Wright sought no follow up mental health treatment for three months between November 2014 and April 2015, and when he did return for a follow-up treatment in April 2015, his main focus was determining whether anyone had requested his treatment records. (*Id.* at 20, 352.) The ALJ further noted that Wright did not seek any mental health treatment after April 2015. (R. at 20.)

Because the record documents Wright's mental condition over a total period of only six months, rather than the required continuous twelve-month period, the ALJ found "[f]or this reason alone [Wright] cannot be found to have a disabling psychological impairment. (*Id.*) The ALJ reasoned that Wright has failed to establish that his alleged symptoms affect his ability to perform basic work activities because there were no "medical signs or laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, showing the existence of such impairments," as required in 20 C.F.R. §§ 404.1529, 416.929. (*Id.* at 19.) Nevertheless, the ALJ found "[i]n giving [Wright] the benefit of all doubt based on the previous [ALJ] decision

12

[regarding Wright's limitations] and the evidence of daily alcohol abuse . . . he is limited to light work involving simple and routine tasks." (*Id.*)

The ALJ's findings are supported by substantial evidence in the administrative record. The ALJ conducted an extensive review of Wright's medical records in the administrative record, gave Wright "the benefit of all doubt," and found that Wright neither suffers from a disabling physical condition, (R. at 19), nor a disabling mental condition, (*id.* at 21), such as would preclude him from all work. Moreover, no treating physician opined that Wright was disabled. "It is significant when no physician submits a medical conclusion that a claimant is disabled and unable to perform any type of work." *Wolcott v. Comm'r of Soc. Sec.*, 2015 WL 474326, at *3 (W.D. Tenn., Feb. 4 2015)(*citing Siterlet v. Sec'y of Health & Human Srvs.*, 823 F.2d 918, 920-21 (6th Cir. 1987)).

The ALJ sufficiently explained the weight he assigned to the various medical opinions contained therein. The ALJ gave "great weight" to the opinion of Dr. Yates and the Disability Determination Services ("DDS") medical consultants, (R. at 21), who opined that Wright has no physical limitations because the medical records after the alleged onset date "show[] no treatment for ongoing medical issues;" his "remote leg fracture is well healed," (*id.* at 296-97, 299-300); and "objective medical findings repeatedly indicate that he has normal gait, strength, and

13

musculoskeletal range of motion," (*id.* at 280-325, 355-58). The ALJ gave only "partial weight" to the opinions of the psychological evaluator and DDS psychological consultants, (*id.* at 21), who opined that Wright had no severe psychological impairments, (*id.* at 76-85, 102-113, 319-25). The ALJ disagreed with these findings, but gave Wright "the benefit of all doubt" and found that Wright's depression and history of alcohol abuse limited him to work involving simple and routine tasks. (*Id.* at 21.)

The ALJ also discounted Wright's repeated GAF score of 40 and explained his reasons for doing so.[7] (*Id.* at 22.) The ALJ discounted the importance of his GAF score because of its inherent unreliability,[8] because Wright's providers failed to provide

---

[7]GAF ratings are subjective determinations based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2014) at 32. A GAF score of 40 can be described as follows: a GAF score in the range of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Id.* at 34.

[8]In his discussion of why GAF scores are "inherently of little evidentiary value in [the] adjudicative process," the ALJ explained:

> First, the scores are not standardized, meaning adjudicators cannot draw reliable inferences from differences in GAF ratings assigned by different medical sources or from a single GAF rating. GAF ratings are not specific and need supporting detail. Finally, the scores lack longitudinal context. A GAF rating is only a snapshot about symptom severity and level of functioning. A GAF rating is usually an estimate of the

14

reasons for finding such a low score, and because Wright's scores remained the same "despite the findings of normal attention, concentration, memory, behavior, thoughts, and functioning" and "even when he denied any hallucinations, had normal mental status exams, and reported that he was attending college." (*Id.* (citing to R. at 355-58)).

The ALJ's decision regarding Wright's RFC is supported by substantial evidence. It is the ALJ's responsibility to determine Wright's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and his own description of his limitations. *See Anderson v. Shalala,* 51 F.3d 777 (8th Cir.1995); 20 C.F.R. §§ 416.945(a) & 416.946. Here, the ALJ considered all of the evidence in the record and adequately explained the basis for his RFC finding. As the ALJ's RFC was within the "zone of choice" supported by substantial evidence, his finding is proper. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

After finding that Wright could not perform his past relevant

---

best level of functioning over the last week or so, or over the entirety of the past year. It rarely overrides a more specific longitudinal picture. Unless the medical source clearly explains the reason behind his or her GAF rating and the period to which the rating applies, the GAF rating does not help provide a reliable longitudinal picture of the claimant's alleged impairments.

(R. at 22.)

15

work, at step five, the ALJ determined that jobs exist in significant numbers that Wright can perform by relying on the testimony of the VE. (R. at 23.) The ALJ asked the VE about an individual of Wright's age, education, work experience, and RFC. (*Id.* at 41.) The VE testified that such an individual was capable of performing the jobs of a packager, laundry laborer, or a cashier. (*Id.* at 42.) Because the VE identified over 5,000,000 jobs nationwide which Wright could perform, (*id.*), substantial evidence supports the ALJ's finding that Wright is not disabled. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)(concluding that 6,000 jobs nationwide is a significant number).

For these reasons, the court finds there is substantial evidence in the administrative record supporting the Commissioner's decision denying Wright's application for benefits under Title II and Title XVI of the Social Security Act.

### III. CONCLUSION

For the foregoing reasons, it is recommended that the court affirm the decision of the Commissioner of Social Security.

Respectfully submitted this 21st day of April, 2019.

                                s/Diane K. Vescovo
                                DIANE K. VESCOVO
                                CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.